UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
|---|---|---|---|
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - DEFENDANTS PONTOON SOLUTIONS, INC., ADECCO USA, INC., ROSE INTERNATIONAL INC., AND BANK OF AMERICA, N.A.'S MOTIONS FOR SUMMARY JUDGMENT (filed June 7, 2015, dkts. 52, 53, 54)

## I.   INTRODUCTION

On March 13, 2015, plaintiff J. Robert Berrellez filed this putative class action against defendants Pontoon Solutions, Inc. ("Pontoon"), Adecco USA, Inc. ("Adecco"), Rose International, Inc. ("Rose"), Bank of America, N.A, and Does 1–50 inclusive. ("BANA").  Dkt. 1.  Plaintiff alleges that defendants violated the Fair Credit Reporting Act ("FCRA") by: (1) obtaining plaintiff's consumer report without providing a FCRA-compliant disclosure form; and (2) obtaining plaintiff's investigative consumer report without providing him a summary of his rights under the FCRA.  Id.

On May 8, 2015, defendant BANA filed a motion to dismiss plaintiff's complaint, dkt. 27, which was joined by defendants Pontoon, Adecco, and Rose on the same date, dkts. 28, 29.  On May 18, 2015, plaintiff filed his first amended complaint against Pontoon, Adecco, Rose, BANA, and Does 1–10, inclusive.  Dkt. 32 ("FAC").  In the FAC, plaintiff raises the same two FCRA claims and he alleges that defendants failed to make disclosures required by the Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1786 et seq., and the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 et seq.  In light of the filing of the FAC, on May 20, 2015, the Court ruled that defendants' pending motions to dismiss were moot.  Dkt. 34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
|---|---|---|---|
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

On June 7, 2016, defendants filed motions for summary judgment. Dkts. 52, 53, 54. Plaintiff filed his opposition to defendants' motions on August 22, 2016. Dkt 61. ("Opp'n"). Defendants filed their replies on August 29, 2016. Dkts. 69, 72, 74.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Relationship between the Parties

The following facts are not in dispute.

In June 2009, BANA entered into a contingent labor management agreement ("CLMA") with Adecco. Dkt. 54-1 at 2 ("Pontoon/Adecco MSJ). Under the CLMA, Adecco acted as a Master Service Provider ("MSP") of contract labor for BANA. Id. Adecco also contracted with suppliers of contract workers, including Rose, to staff BANA projects. Id. In January 2011, Adecco spun off its MSP business under the name Adecco Solutions, Inc. Id. Beginning on March 31, 2011, Adecco Solutions was the MSP under the CLMA. Id. On December 21, 2012, Adecco Solutions changed its name to Pontoon Solutions. Id.

On June 26, 2016, Rose made an offer of employment to plaintiff with the expectation that he would be assigned, through Pontoon/Adecco, to work on a BANA assignment. Dkt 62 at 3.

### B. Forms and Background Checks

The following facts are not in dispute.

After receiving an offer of employment from Rose, plaintiff received a Background Authorization and Release form ("Release") in a packet of pre-employment paperwork that was sent to him by Rose. Dkt. 62 at 3. See dkt. 52-5, Fulwilder Decl. Ex. 3 ("Release"). Plaintiff never signed the Release. Dkt. 63 at 7. Plaintiff does not contend that any defendant procured a consumer report of any kind on the basis of the Release.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'   JS-6

| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
|---|---|---|---|
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

    Plaintiff was also directed to a web-based tool called "Apply Direct," operated by a First Advantage, that prompted plaintiff to fill out two other forms: a "Consent Form" and an "Authorization Form for Consumer Reports." See dkt. 52-3, Prebil Decl. Ex 5 ("Consent Form"), Ex. 6 ("Authorization Form"). BANA required plaintiff to complete these forms as part of BANA's criminal background check process. See dkt. 52-1 at 5 ("BANA MSJ"). The Consent Form includes, inter alia, a statement that federal law requires BANA to ensure that individuals placed on assignment with BANA do not have certain disqualifying criminal convictions; several statements of consent, including consent to be fingerprinted, consent to the preparation of an investigative consumer report, and consent to BANA's request of a consumer report about prior employment; and releases of liability for communications with third parties to verify the applicant's information. Prebil Decl. Ex 5; see also dkt. 62 at 5. Plaintiff received and electronically signed the Consent Form on June 22, 2012. Dkt. 62 at 8. The Authorization Form authorizes the disclosure of information for the purpose of procuring consumer reports or investigative consumer reports. Prebil Decl. Ex 6. Plaintiff signed the Authorization Form on June 22, 2012. Dkt. 62 at 11.

    After plaintiff completed and signed the Consent and Authorization Forms, First Advantage arranged for plaintiff to be fingerprinted and First Advantage conducted criminal background checks of plaintiff against several federal databases. BANA MSJ at 6; dkt 62 at 13–14. These background checks did not involve plaintiff's credit standing, worthiness, or capacity, and did not involve personal interviews. BANA MSJ at 6; dkt 62 at 15.[1]

---

[1] BANA and plaintiff dispute whether BANA, in procuring criminal background checks, procured a "consumer report" under FCRA. BANA argues that its criminal background checks are not covered by FCRA's definition of a "consumer report" pursuant to 15 U.S.C. §§ 1681a(d)(2) and (y)(1). BANA MSJ at 15–16. Therefore, BANA argues, it is not subject to FCRA's disclosure requirements. Id. Section 1681a(d)(2) excludes from FCRA's definition of "consumer report" those communications that satisfy the elements of § 1681a(y)(1). 15 U.S.C. § 1681a(d)(2). Section 1681a(y)(1) excludes reports that are: (A) "made to an employer in connection with an investigation of-- (i) suspected misconduct relating to employment; or (ii) compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;" (B) "not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
|---|---|---|---|
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

The parties dispute whether Pontoon/Adecco and Rose played any role in causing the criminal background check to be procured.

Pontoon/Adecco contends that it did not provide a FCRA disclosure or authorization to plaintiff and that it did not procure a consumer report with respect to plaintiff. Pontoon/Adecco MSJ at 3. Plaintiff disputes this assertion, alleging that a Pontoon/Adecco employee requested the criminal background checks facilitated by First Advantage. Dkt. 63 at 5.

Rose avers that it did not obtain a background check of any kind on plaintiff. See dkt 53-1 at 4–5 ("Rose MSJ"). Plaintiff provides contradictory responses to this assertion. In his statement of genuine disputes of material fact in opposition to BANA's statement of undisputed material facts, plaintiff does not dispute BANA's assertion that "[a]t no point before, during, or after Plaintiff's employment with Rose did Rose conduct or obtain a background check of any kind on Plaintiff."[2] Dkt. 62 at 4. However, in contravention of this undisputed statement, plaintiff states, in opposition to *Rose's* statement of undisputed material facts, that he disputes Rose's assertion that "[p]rior to,

---

made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity;" and (C) not provided to any person except the employer or an agent of the employer, government agencies or officials, or a regulatory organization. 15 U.S.C. § 1681a(y)(1). BANA contends that its background checks on plaintiff were "'in connection' with 'an investigation' into 'compliance' with federal law and the Bank's own written policies." Id. at 16. Plaintiff disagrees. See Opp'n at 17–18. In a prior lawsuit, BANA made substantially the same argument and the court concluded that similar reports procured by BANA in connection with its background screenings *were* "consumer reports" and subject to FCRA's disclosure requirements. Newton v. Bank of Am., No. 2:14-cv-03714-CBM-MRW, 2015 WL 10435907, at *5 (C.D. Cal. May 12, 2015) appeal docketed, No. 15-55781 (9th Cir. May 22, 2015).

[2] Plaintiff captioned both dkt. 62 and dkt. 63 as: "Plaintiff's Statement of Genuine Disputes of Material Fact in Opposition to Defendant Pontoon Solutions, Inc. and Adecco USA, Inc.'s Separate Statement of Disputed Material Facts and Supporting Evdence in Support of their Motion for Summary Judgment." However, it appears that dkt. 62 responds to BANA and dkt. 63 responds to Pontoon/Adecco.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

during, or after Plaintiff's employment with Rose, Rose did not obtain a background check of any kind of plaintiff." Dkt. 64 at 8. Rose sent an email to plaintiff that contained a link to the Apply Direct online tool operated by First Advantage, which prompted plaintiff to complete the Consent and Authorization forms. Id.; dkt. 75 at 2

### C.   Plaintiff's Claims

In the FAC, plaintiff does not raise any claim against defendants arising from the Consent Form or the Authorization Form. All of plaintiff's claims are based on the language contained in the Release.

On the basis of the Release, plaintiff raises claims under FCRA, ICRAA, and CCRAA.

First, plaintiff alleges that defendants procured or caused to be procured for plaintiff and class members consumer reports that lacked a written disclosure as required by Section 1681b(b)(2)(A) of FCRA. FAC ¶ 41. Section 1681b(b)(2)(A) provides in relevant part:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--
>
> **(i)** a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that *consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
> **(ii)** the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added). According to plaintiff, the Release included a disclosure that a consumer report may be obtained for employment purposes, but also included "other extraneous information." FAC ¶¶ 35, 40. Plaintiff therefore

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

contends that the Release violated FCRA's disclosure provision because the disclosure was not provided on its own and was not "clear and conspicuous." Id. ¶ 40. Plaintiff avers that defendants maintained a pattern and practice of failing to provide written disclosures in compliance with FCRA and that they willfully violated Section 1681b(b)(2)(A). Id. ¶¶ 41–42.

Second, plaintiff alleges that defendants procured or caused to be procured investigative consumer reports for plaintiff and class members in violation of Section 1681d(a) of FCRA because defendants failed to inform plaintiff and class members of their right to request a written summary of their rights. Id. ¶ 43. Section 1681d(a)(1)(B) provides in relevant part:

> A person may not procure or cause to be prepared an investigative consumer report on any consumer unless--
>
> (1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) *includes a statement informing the consumer of his right to request* the additional disclosures provided for under subsection (b) of this section and *the written summary of the rights of the consumer prepared pursuant to section 1681g(c) of this title*[.]

15 U.S.C. § 1681d(a)(1) (emphases added).

In addition to his claims under FCRA, plaintiff raises claims under California law. Plaintiff alleges that defendants violated ICRAA in two ways: (1) the Release included a disclosure that a consumer report may be obtained for employment purposes, but also included "other extraneous information," id. ¶ 57; and (2) the Release failed to include required information (e.g., the name and address of the investigative consumer reporting agency conducting the investigation), id. ¶ 60. ICRAA provides in relevant part:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

> The person procuring or causing the report to be made provides a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure, that:
> > (i) An investigative consumer report may be obtained.
> > (ii) The permissible purpose of the report is identified.
> > (iii) The disclosure may include information on the consumer's character, general reputation, personal characteristics, and mode of living.
> > (iv) Identifies the name, address, and telephone number of the investigative consumer reporting agency conducting the investigation.
> > (v) Notifies the consumer in writing of the nature and scope of the investigation requested, including a summary of the provisions of Section 1786.22.

Cal. Civ. Code § 1786.16(B).

Lastly, plaintiff alleges that defendants violated CCRAA because the Release did not identify a specific statutory basis for use of any credit report ultimately produced as a result of the Release. CCRAA provides in relevant part:

> Prior to requesting a consumer credit report for employment purposes, the user of the report shall provide written notice to the person involved. The notice shall inform the person that a report will be used, and shall identify the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the report.

Cal. Civ. Code § 1785.20.5(a).

As a result of the alleged violations of FCRA, ICRAA, and CCRAA, plaintiff contends that he and class members have been injured because their privacy and statutory rights were invaded. FAC ¶¶ 45, 63, 78. Specifically, plaintiff alleges that he had a infraction record from 1999 that he considers private and that he does not want this fact to be disclosed to the public. Dkt. 68, Berrellez Decl. ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

    **D.**    **Defendants' Arguments**

Each defendant argues that plaintiff does not have Article III standing to raise his claims because plaintiff has not alleged an injury in fact—a concrete and particularized harm. See BANA MSJ at 9–11, Rose MSJ 5–7; Pontoon/Adecco MSJ at 4–7.

Each defendant also argues that it did not violate FCRA, ICRAA, or CCRAA because (for reasons specific to each defendant) it did not procure or cause to be procured a credit or background report on plaintiff for employment purposes. See BANA MSJ at 11–21, Rose MSJ 7–8; Pontoon/Adecco MSJ at 7–8.

BANA argues that all of plaintiff's claims are barred by the applicable statutes of limitations. BANA MSJ at 23–25.

Rose contends that it should not be held liable for the acts of the other defendants under a theory of joint employment or agency because, according to Rose, it is a separate and independent business entity. Rose MSJ 9–10.

Lastly, Pontoon/Adecco argues that Adecco may not be held liable because it was not a party to the CLMA during plaintiff's employment. Pontoon/Adecco MSJ at 8–9.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

### A. Plaintiff Lacks Standing to Raise his Claims

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). From a constitutional standpoint, standing addresses the question of whether the plaintiff has made out a case or controversy between himself and the defendant. Id. A plaintiff must demonstrate three elements that constitute the "irreducible minimum" of Article III standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
|---|---|---|---|
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted).

Plaintiff contends in his complaint that, as a result of the alleged deficiencies in the Release, he and class members were injured because their privacy and statutory rights were invaded.

The Court finds that plaintiff has not adequately established standing because he has not demonstrated that defendants' conduct—as alleged in the complaint—caused him harm. Plaintiff alleges that defendants violated FCRA, CCRAA, and ICRAA on the basis of language *in the Release*. However, based on undisputed material facts, plaintiff never signed the Release and defendants did not take any action as a result of the Release. Therefore, defendants' alleged failures with respect the Release could not have, and did not, cause plaintiff's alleged injury.

Absent Article III standing, the Court may not exercise jurisdiction over plaintiff's claims, including his state law claims. See Lee v. Am. Nat. Ins. Co., 260 F.3d 997, 1001–02 (9th Cir. 2001) ("Article III of the Constitution . . . limits the jurisdiction of the federal courts to 'cases and controversies,' a restriction that has been held to require a plaintiff to show, *inter alia*, that he has actually been injured by the defendant's challenged conduct. So a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury.").

**B.    Plaintiffs Claims are Time-Barred by the Applicable Statutes of Limitations**

Even if plaintiff had standing, his claims are time-barred under the applicable two-year statutes of limitations. Cf. Orr v. Peterson, No. 3:14-cv-00833-AC, 2015 WL 2239590, at *5 (D. Or. May 12, 2015) (concluding that plaintiff lacked standing to pursue his claim and finding, in the alternative, that plaintiff failed to support the claim with any evidence).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

FCRA establishes a limitations period of either: "(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

The CCRAA provides, in relevant part, that "[a]n action to enforce any liability created under this chapter may be brought in any appropriate court of competent jurisdiction within two years from the date the plaintiff knew of, or should have known of, the violation of this title, but not more than seven years from the earliest date on which liability could have arisen." Cal. Civ. Code § 1785.33.

An action to enforce liability created under ICRAA "may be brought in any appropriate court of competent jurisdiction within two years from the date of discovery." Cal. Civ. Code § 1786.52.

BANA argues that plaintiff discovered or should have discovered the alleged violations at the time that plaintiff signed the Consent and Authorization Forms in June 2012. BANA MSJ 23–24. Furthermore, BANA contends that plaintiff also should have known that BANA obtained a background check on him when he started his assignment at BANA, because the Consent form stated that federal law required BANA to ensure that individuals placed on assignment do not have an disqualifying convictions. Id. At 24.

Plaintiff argues that he is not time barred for two reasons. First, plaintiff argues that he did not discover the violation when he signed the Consent and Authorization Forms because a violation of FCRA occurs only after a consumer report is obtained. Opp'n at 23. Therefore, according to plaintiff, at the time he signed the forms he was not aware that a violation occurred—i.e., that the forms were defective *and* a report was obtained—because he was not mailed a copy of the report that was generated. Id.

The Court finds that plaintiff's action is barred by the applicable statutes of limitations. These statutes began to run at whichever date is earlier: (1) June 22, 2012, when plaintiff signed the Consent and Authorization Forms, or (2) the date on which plaintiff received the Release in the mail, which preceded the start of plaintiff's assignment with BANA (though neither party has identified the date of receipt). Certainly, at the very latest, the statutes of limitations began to run when plaintiff began

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

his assignment with BANA on July 16, 2012.  In any of those three cases, plaintiff's claims are time-barred.  "[T]he law effectively presumes that everyone who signs a contract has read it thoroughly, whether or not that is true." Roldan v. Callahan & Blaine, 219 Cal. App. 4th 87, 93 (2013)); see also Restatement (Second) of Contracts § 157 cmt. b (2016) ("Generally, one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms merely by contending that he did not read them; his assent is deemed to cover unknown as well as known terms.").  The Content Form provides, inter alia:

> Bank of America is required to confirm that the employees of vendors placed on assignment at the Bank have no disqualifying criminal convictions in their backgrounds.  To fulfill this requirement, the Bank has established a background screening procedure for individuals who will be assigned to work at the Bank. As a part of this procedure, you have been asked to disclose past criminal convictions. . . .
>
> Accordingly, I agree to be fingerprinted if requested by Bank of America or required by applicable law in connection with beginning a placement on assignment providing services to the Bank or at any time during a placement on assignment providing services to the Bank. . . .
>
> I hereby give Bank of America permission to request the preparation of an investigative consumer report that may include information relating to my criminal record and my character in connection with my placement on assignment or my eligibility to continue an ongoing assignment.

Prebil Decl. Ex 5.  The Authorization Form provides, inter alia:

> In connection with your application for employment (including contract for services), understand that consumer reports or investigative consumer reports which may contain public record information may be requested or made on you including consumer credit, criminal records, driving record, education, prior employment verification, workers compensation claims and others.  Further, understand that information from various Federal, State,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

> local and other agencies which contain your past activities will be requested.
> . . .
>
> By signing below, you hereby authorize without reservation, any party or agency contacted by this employer to furnish the above mentioned information. Your further authorize ongoing procurement of the above mentioned reports at any time during your employment (or contract).

Prebil Decl. Ex 6. Because plaintiff signed both the Consent and the Authorization Forms, the Court presumes that he read those documents and was aware that a background check would be procured before he began his assignment with BANA. Therefore, plaintiff was on notice of any defects found in the Consent and the Authorization Forms in June 2012. Furthermore, the Court agrees with BANA that by the time plaintiff began his assignment with BANA, plaintiff had constructive notice that BANA had procured a background check. The Court is particularly swayed by the fact that plaintiff does not dispute that First Advantage facilitated the submission of plaintiff's fingerprints to the Federal Bureau of Investigation. Dkt. 62 at 12. Even construing the facts in a light most favorable to plaintiff, a rational trier of fact would not be able to find that plaintiff—having had his fingerprints taken—was unaware that BANA had procured a background check.

  Second, plaintiff avers that, pursuant to American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), the class claims in this case were tolled by a previous lawsuit against BANA, Newton v. Bank of America, 2:14-cv-03714-CBM-MRW. Opp'n at 23–24. BANA argues that Newton did not toll plaintiff's class claims because the proposed class in Newton excluded plaintiff. BANA Reply at 17. In the original complaint in Newton, the putative class was defined as: "All persons who executed online authorization forms permitting Defendant to obtain a consumer report as part of an employment application at any time on or after May 14, 2009 (the 'Class')." Newton, Complaint ¶ 8 (dkt 1). Plaintiff would qualify as a member of *that* class. However, the Newton plaintiff amended her complaint and redefined the class. The Newton putative class was redefined as: "All prospective ***employees or employees of Defendant*** residing in the United States who were the subject of a consumer report which was procured by Defendant within the period by FCRA, 15 U.S.C. § 1681p, prior to the filing of this action." Newton, First Amended Complaint ¶ 47 (dkt 20) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

Thus, whether plaintiff is a member of the Newton putative class depends on whether BANA was plaintiff's employer. Plaintiff alleges that he was jointly employed by all defendants, FAC ¶ 5, while BANA contends it was not plaintiff's employer. BANA Reply at 17.

Because FCRA does not provide a definition of "employer," the Court looks to the definition provided by the Fair Labor Standards Act ("FLSA"). See Erlenbaugh v. United States, 409 U.S. 239, 243–44 (1972) ("The rule of in pari materia . . . is a reflection of practical experience in the interpretation of statutes: a legislative body generally uses a particular word with a consistent meaning in a given context. Thus, for example, a later act can . . . be regarded as a legislative interpretation of (an) earlier act . . . in the sense that it aids in ascertaining the meaning of the words as used in their contemporary setting, and is therefore entitled to great weight in resolving any ambiguities and doubts." (quotation marks omitted)). The FLSA defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). It defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." Id. § 203(d). The determination of whether an employer-employee relationship exists depends on the "economic reality" of the situation. Torres–Lopez v. May, 111 F.3d 633, 639 (9th Cir.1997) (quoting Bonnette v. Cal. Health & Welf. Agency, 704 F.2d 1465, 1470 (9th Cir.1983)). While this determination does not depend on "isolated factors," Boucher v. Shaw, 572 F.3d 1087, 1090–91 (9th Cir. 2009) (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)), courts in this Circuit frequently rely on factors set forth in Bonnette, 704 F.2d at 1470, and Torres–Lopez, 111 F.3d at 640, to guide their analysis. See, e.g., Moreau v. Air France, 356 F.3d 942, 946–47 (9th Cir. 2003); see also 29 CFR § 791.2 (stating that the joint employer determination "depends on all the facts in a particular case").

The Bonnette factors assess whether the entity asserted to be a joint employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." 704 F.2d at 1470; see also In re Enterprise Rent–A–Car Wage & Hour Employment Practices Litig., 683 F.3d 462, 469 (3d Cir. 2012) (applying a four-factor test similar to the Bonnette factors).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
|---|---|---|---|
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

The Torres–Lopez factors supplement, but do not replace, the Bonnette factors. They assess:

(1) whether the work was a specialty job on the production line, (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes, (3) whether the premises and equipment of the employer are used for the work, (4) whether the employees had a business organization that could or did shift as a unit from one [worksite] to another, (5) whether the work was piecework and not work that required initiative, judgment or foresight, (6) whether the employee had an opportunity for profit or loss depending upon [the alleged employee's] managerial skill, (7) whether there was "permanence [in] the working relationship, and (8) whether the service rendered is an integral part of the alleged employer's business.

111 F.3d at 640 (internal quotations and citations omitted).

Plaintiff alleges no facts that demonstrate that BANA was plaintiff's employer under the Bonnette or Torres-Lopez tests. Moreover, plaintiff does not dispute BANA's factual statements tending to show BANA was *not* plaintiff's employer. For example, plaintiff does not dispute that "[t]he contract personnel who worked on Bank assignments pursuant to this arrangement were directly employed by Rose and *not* the Bank or Adecco/Pontoon." Dkt. 62 at 3 (emphasis added). Plaintiff does not dispute Rose's statement that "Plaintiff was employed by Rose from July 16, 2012 to January 8, 2013. Plaintiff was assigned to work on Bank assignment during his entire period of employment with Rose." Dkt 64 at 8. Lastly, plaintiff does not dispute that "there is no common ownership or financial control between Rose and the Bank or Rose and Adecco/Pontoon," or that "there is no interrelation of operations between Rose, the Bank, and Adecco/Pontoon." Id. at 7. The Court therefore concludes that plaintiff was not an employee of BANA.

As a result, plaintiff was not a member of the putative class in Newton and he is not entitled to any tolling of the statutes of limitations under American Pipe.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-01898-CAS(FFMx) | Date | October 13, 2016 |
| Title | J. ROBERT BERRELLEZ v. PONTOON SOLUTIONS, INC. ET AL. | | |

The Court thus concludes that plaintiff's claims are time-barred by the applicable two-year statutes of limitations. In light of its conclusion that plaintiff lacks standing, and is in any event barred by the applicable statutes of limitations, the Court does not reach defendants' other arguments made in support of defendants' motion for summary judgment.

## V.    CONCLUSION

In accordance with the foregoing, defendants' motions for summary judgment are hereby **GRANTED**.

IT IS SO ORDERED.

|  |  | 00 | : | 00 |
|---|---|---|---|---|
|  | Initials of Preparer | | CMJ | |